UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

ALEXANDRA FLEMING, LINDA
SHISLER, MATTHEW PEGOUSKIE and
VICKE PEGOUSKIE                                     Case No 21-cv-
                                                    Hon.
                        Plaintiffs,

v.

CENTRAL HURON AMBULANCE
SERVICE ASSOCIATION,

                        Defendant.
_____/
ERIC STEMPIEN (P58703)
STEMPIEN LAW, PLLC
Attorneys for Plaintiffs
38701 Seven Mile Rd., Suite 130
Livonia, MI 48152
(734)744-7002
eric@stempien.com
_____/

## **COMPLAINT AND JURY DEMAND**

Plaintiffs, Alexandra Fleming, Linda Shisler, Matthew Pegouskie and Vicke

Pegouskie by and through their attorneys, Stempien Law, PLLC hereby complain

against Defendant Central Huron Ambulance Service Association, and in support

thereof states:

1.  Plaintiff Alexandra Fleming ("Fleming") is a resident of the City of Bad Axe,

    Huron County, Michigan.

2. Plaintiff Linda Shisler ("Shisler") is a resident of the City of Bad Axe, Huron County, Michigan.

3. Plaintiff Matthew Pegouskie ("Matthew") is a resident of the City of Midland, Midland County, Michigan.

4. Plaintiff Vicke Pegouskie ("Vicke") is a resident of the City of Midland, Midland County, Michigan.

5. Defendant Central Huron Ambulance Service Association ("CHAS" or "Defendant") is a governmental administrative entity created through an interlocal agreement between the City of Bad Axe, The Villages of Port Austin and Kinde and the Townships of Colfax, Dwight, Hume, Lincoln Meade, Port Austin, Pte. Aux Barques, Verona, Siegel, and Sheridan, all of which are political subdivisions of the State of Michigan.

6. Jurisdiction is vested upon this Court for Plaintiff's constitutional claims pursuant to 42 USC §1983, 28 USC §1343 and 28 USC §1331. Venue lies in the Eastern District of Michigan.

7. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 USC §1367.

8. At all times pertinent hereto, CHAS acted under the color of state law, meaning under color of the statutes, codes, ordinances, regulations, policies,

customs and usages of the State of Michigan and/or Madison District Public Schools.

9.  The events giving rise to this cause occurred in the Eastern District of Michigan.

## **GENERAL ALLEGATIONS**

### ***Alexandra Fleming***

10. Fleming was employed as an emergency medical technician for CHAS from May 18, 2020 until February 11, 2021 when she was discharged from her employment.

11. In addition to EMT duties, Fleming provided administrative support to the CHAS executives, including Director Linda Shisler.

*Whistleblower's Protection Act:*

12. On or about December 22, 2020 Fleming was working a shift as an EMT for CHAS on ambulance unit 402; she was partnered with Matthew Pegouskie, another of Defendant's EMT and Paula Kipper ("Kipper"), a paramedic.

13. Kipper was also the Assistant Director for CHAS, and as such was one of Fleming's supervisors.

14. At approximately 5:30 p.m., Fleming was the driver of CHAS unit 402 when they received a call requesting an intercept with CHAS unit 407. Unit 407 was transporting a patient suffering from a suspected stroke.

15. Unit 407 did not have a paramedic on the ambulance, and therefore sought an intercept from unit 402, because unit 402 had Kipper on board who was a paramedic.

16. Fleming received the radio call for the intercept with unit 407.

17. Upon receipt of the intercept request, Fleming began driving towards unit 402 for the intercept.

18. Kipper, however, refused to allow Fleming to go to the intercept, but instead instructed Fleming to drive her back to the CHAS headquarters. Kipper insisted that she would not go to the intercept because she had social plans with her daughter that evening.

19. The drive to the headquarters was approximately 20 minutes, which would have significantly delayed the response time for the stroke patient.

20. Fleming raised that concern with Kipper, but she continued to insist and instruct that she be returned to the headquarters, and that unit 402 could pick up a different paramedic at the headquarters for the intercept.

21. Fleming did as her supervisor instructed and returned to the headquarters. Fleming picked up a different paramedic and then returned to attempt the intercept.

22. However, due to the delay caused by Kipper's instruction to return her to the headquarters for her social plans, the intercept with unit 407 was missed and the stroke patient never received paramedic care.

23. The EMTs and paramedics at CHAS are subject to the laws of the State of Michigan as well as the protocols issued by the local medical control authority.

24. Following the incident, Fleming reported Kipper's violations of law and protocol to the appropriate government officials and agencies.

25. Shortly after the December 22, 2020 incident described above, Kipper threatened both Fleming and Josh Bletl that they would suffer negative personal and professional consequences if they reported her conduct.

26. Fleming suffered serious negative consequences, including discharge from her position at CHAS, shortly after the threat made by Kipper.

*First Amendment Retaliation:*

27. In or around January 2021, Fleming became aware that the Board of Directors of CHAS was considering discharging Director Linda Shisler ("Shisler") from her position at CHAS.

28. Prior to the CHAS Board's February 2021 meeting, Fleming met with individual members of the Board as well as elected officials from the local governmental entities who participated in the CHAS interlocal agreement.

29. At the February 2021 CHAS Board meeting, Fleming made public comments in which she supported continued employment of Shisler; Fleming stated criticisms of the decisions being made and/or contemplated by the Board, as well criticisms of the manner in which the Board was making its decisions regarding Shisler's employment.

30. These statements were protected under the First Amendment of the United States Constitution.

31. The day following the February 2021 CHAS Board meeting, Fleming was removed from all schedules and all shifts with CHAS; she was completely removed from earning any wages from CHAS.

32. For the next several weeks, Fleming made multiple requests regarding her employment status and requesting that she be provided work shifts as an EMT for CHAS.

33. CHAS has refused to provide Fleming any work shifts as an EMT, thereby terminating her from employment.

34. The termination was the direct and proximate result and in retaliation of Fleming's exercise of her First Amendment rights.

### *Linda Shisler*

35. Shisler was employed with CHAS as the Executive Director until her discharge on or about February 10, 2021.

36. Shisler's discharge violates both Michigan's Whistleblower's Protection Act as well as 42 USC §1983.

*Whistleblower's Protection Act:*

37. In or about the summer of 2020, Shisler became aware that CHAS was in financial distress and was unable to pay all of its debts and obligations, including its payroll obligations to its employees.

38. Shisler informed Michael Smalley ("Smalley"), the Chairman of the Board for CHAS about the budget shortfall.

39. Shisler informed Smalley that CHAS would need to cash out a portion of one of its investment accounts in order to meet its financial obligations.

40. The proposal to cash out a portion of the investment accounts requires Board approval, pursuant to the Interlocal Agreement and by-laws governing CHAS.

41. Smalley told Shisler that he would not allow a partial cash out of any investment accounts.

42. Shisler told Smalley that he was violating the Interlocal Agreement by unilaterally refusing to a partial cash out. She told Smalley that he was required to take this matter to the Board and had no legal authority to make a unilateral decision.

43. The Interlocal Agreement provides that "the Chairperson shall not have any executive or administrative function other than as a member of the Board".

44. Therefore, Shisler was reporting a violation of law or regulation when she made the reports referenced in paragraphs 38 through 43 above.

45. Shisler suffered negative consequences, including but not limited to discharge from her position, as a result of the above reports.

46. Further, Shisler reported the conduct and actions of Kipper on December 22, 2020, which are fully described in paragraphs 12 through 25 above, to Smalley.

47. Shisler reported Kipper's conduct and actions as violations of law, regulation and protocol.

48. Almost immediately after making the report of Kipper's conduct and actions to Smalley, Shisler suffered negative employment consequences beginning at the January 2021 Board meeting where Smalley wrongfully and inaccurately criticized Shisler to the Board.

49. At the February 2021 Board meeting, Shisler's employment was terminated.

*First Amendment Violation:*

50. At the Board meetings and committee meetings in January and February 2021, Shisler stated criticisms of the decisions being made and/or contemplated by the Board, as well criticisms of the manner in which the Board was making its decisions.

51. These statements were protected under the First Amendment of the United States Constitution.

52. At the February 2021 Board meeting, CHAS terminated Shisler's employment.

53. The termination of Shisler's employment was the direct and proximate result of her protected First Amendment speech and activity.

### *Matthew Pegouskie*

54. Matthew began his employment with CHAS in October 2018.

55. Matthew was employed as an Emergency Medical Technician – Basic (EMT-B) until his discharge in April 2021.

56. Matthew was a student in CHAS' paramedic education program, studying to become a paramedic (EMT-P).

57. In April 2021, CHAS wrongfully discharged Matthew from the paramedic education program.

*First Amendment Retaliation:*

58. In or around January 2021, Matthew became aware that the Board of Directors of CHAS was considering discharging Shisler from her position at CHAS.

59. At the February 2021 CHAS Board meeting, Matthew made public comments in which he supported continued employment of Shisler; Matthew stated criticisms of the decisions being made and/or contemplated by the Board, as

well criticisms of the manner in which the Board was making its decisions regarding Shisler's employment.

60. These statements were protected under the First Amendment of the United States Constitution.

61. The day following the February 2021 CHAS Board meeting, Matthew was removed from his management position with CHAS.

62. Matthew was then wrongfully discharged from the paramedic education program.

63. The discharge from employment and the paramedic education program was the direct and proximate result and in retaliation of Matthew's exercise of his First Amendment rights.

*Whistleblower's Protection Act:*

64. At the February 2021 Board meeting, Matthew also reported that CHAS was violating Michigan's Open Meetings Act, a state statute.

65. The following day, Matthew was removed from his management position with CHAS.

66. Matthew was then wrongfully discharged from the paramedic education program.

## *Vicke Pegouskie*

*First Amendment Violation:*

67. Vicke began her employment with CHAS as a medical first responder in August 2019.

68. Vicke was thereafter promoted to an EMT-B position with CHAS.

69. Vicke worked as an EMT-B for CHAS until her discharge in April 2021.

70. Vicke was also a student in CHAS' paramedic education program.

71. In April 2021, Vicke was wrongfully discharged from CHAS' paramedic education program.

72. In or around January 2021, Vicke became aware that the Board of Directors of CHAS was considering discharging Shisler from her position at CHAS.

73. At the February 2021 CHAS Board meeting, Vicke made public comments in which she supported continued employment of Shisler; Vicke stated criticisms of the decisions being made and/or contemplated by the Board, as well criticisms of the manner in which the Board was making its decisions regarding Shisler's employment.

74. These statements were protected under the First Amendment of the United States Constitution.

75. In April 2021, Vicke was wrongfully discharged from the paramedic education program and from her employment with CHAS.

76. The discharge from employment and the paramedic education program was the direct and proximate result and in retaliation of Vicke's exercise of her First Amendment rights.

## COUNT I
## VIOLATION OF 42 USC §1983 – FREE SPEECH AND ASSEMBLY
## PLAINTIFF ALEXANDRA FLEMING

77. Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

78. Acting under the color of state law, CHAS promulgated and carried out the official policies, orders and directives leading to the termination of Fleming's employment, with wanton and reckless disregard for the civil and constitutional rights of Fleming, including her fundamental right to freedom of speech and freedom of assembly as guaranteed by the First Amendment to the United States Constitution.

79. Fleming's verbal and other opposition to the CHAS Board's decision to terminate Shisler's employment was a significant and motivating factor in CHAS' decision to discharge Fleming.

80. Fleming's verbal and other opposition to the CHAS' Board's methods and manners it used in making the decision to discharge Shisler was a significant and motivating factor in CHAS' decision to discharge Fleming.

81. Fleming's political opinions and criticisms of the CHAS Board was a significant and motivating factor in Defendant's decision to terminate her employment.

82. Fleming's association with Linda Shisler was a significant and motivating factor in CHAS' decision to discharge Fleming.

83. Defendant retaliated against Fleming, by discharging her from employment, as a direct and proximate result of the above-stated political speech and association.

84. At all times pertinent hereto, Fleming had a clearly established right to freedom of speech and freedom of association of which a reasonable public official would have known.

85. As a direct and proximate result of Defendant's violations, Plaintiff Fleming has suffered damages including, but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, emotional distress and attorney fees.

<u>**COUNT II**</u>
<u>**VIOLATION OF MICHIGAN WHISTLEBLOWER'S PROTECTION ACT**</u>
<u>**PLAINTIFF ALEXANDRA FLEMING**</u>

86. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as if fully set forth herein.

87. Fleming was an employee of CHAS as that term is defined by the Whistleblower's Protection Act, MCL 15.361, et. seq. ("WPA")

88. CHAS is an employer as that term is defined by the WPA.

89. CHAS is a public body as that term is defined by the WPA.

90. The Board of Directors of CHAS is a public body as that term is defined by the WPA.

91. The City of Bad Axe, the Villages of Port Austin and Kinde and the Townships of Colfax, Dwight, Hume, Lincoln Meade, Port Austin, Pte. Aux Barques, Verona, Siegel, and Sheridan are all public bodies as that term is defined by the WPA.

92. Fleming engaged in protected activity as that term is defined by the CHAS.

93. CHAS was aware of Fleming's protected activity.

94. There is a causal connection between Fleming's protected activity and CHAS' decision to terminate her from her employment.

95. As a direct and proximate result of CHAS' violation of the WPA, Fleming suffered damages as fully set forth in paragraph 85 of this Complaint.

## COUNT III
## VIOLATION OF MICHIGAN PUBLIC POLICY
## PLAINTIFF ALEXANDRA FLEMING

96. Plaintiff hereby incorporates all previous paragraphs of this Complaint as if fully set forth herein.

97. The State of Michigan has a well-established public policy of encouraging reports regarding substandard EMT and/or paramedic care.

98. The State of Michigan has a well-established public policy of encouraging reports of violations of EMS protocols to the appropriate governing agencies.

99. The State of Michigan has a well-established public policy of encouraging and allowing citizens to criticize and question their government.

100. When Fleming reported Kipper's conduct and statements of December 22, 2020, she was engaging in the exact activity that the legislature and other government bodies have established as the public policy of this state.

101. When Fleming spoke to the CHAS Board, the individual board members and the elected officials of the participating local governments in support of Shisler and against the decisions of the CHAS Board, she was engaging in the exact activity that the legislature and other government bodies have established as the public policy of this state.

102. Further, in making the above-referenced reports and the above-referenced statements to the governmental representatives, Fleming was acting in accordance with her statutory rights and duties.

103. Further, in making the above-referenced reports and the above-referenced statements to the governmental representatives, Fleming was refusing to violate the law in the course of her employment.

104. As a direct and proximate result of CHAS' violation of public policy, Fleming has suffered damages as fully set forth in paragraph 85 of this Complaint.

**COUNT IV**
**VIOLATION OF 42 USC §1983 – FREE SPEECH AND ASSEMBLY**
**PLAINTIFF LINDA SHISLER**

105. Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

106. Acting under the color of state law, CHAS promulgated and carried out the official policies, orders and directives leading to the termination of Shisler's employment, with wanton and reckless disregard for the civil and constitutional rights of Shisler, including her fundamental right to freedom of speech and freedom of assembly as guaranteed by the First Amendment to the United States Constitution.

107. Shisler's verbal and other opposition to the CHAS Board's decisions was a significant and motivating factor in CHAS' decision to discharge her.

108. Shisler's verbal and other opposition to the CHAS' Board's methods and manners it used in making its decisions was a significant and motivating factor in CHAS' decision to discharge her.

109. Shisler's political opinions and criticisms of the CHAS Board was a significant and motivating factor in Defendant's decision to terminate her employment.

110. Defendant retaliated against Shisler, by discharging her from employment, as a direct and proximate result of the above-stated political speech and association.

111. At all times pertinent hereto, Shisler had a clearly established right to freedom of speech and freedom of association of which a reasonable public official would have known.

112. As a direct and proximate result of Defendant's violations, Plaintiff Shisler has suffered damages including, but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, emotional distress and attorney fees.

### COUNT V
### VIOLATION OF MICHIGAN WHISTLEBLOWER'S PROTECTION ACT
### PLAINTIFF LINDA SHISLER

113. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as if fully set forth herein.

114. Shisler was an employee of CHAS as that term is defined by the Whistleblower's Protection Act, MCL 15.361, et. seq. ("WPA")

115. CHAS is an employer as that term is defined by the WPA.

116. CHAS is a public body as that term is defined by the WPA.

117. The Board of Directors of CHAS is a public body as that term is defined by the WPA.

118. The City of Bad Axe, the Villages of Port Austin and Kinde and the Townships of Colfax, Dwight, Hume, Lincoln Meade, Port Austin, Pte. Aux Barques, Verona, Siegel, and Sheridan are all public bodies as that term is defined by the WPA.

119. Shisler engaged in protected activity as that term is defined by the CHAS.

120. CHAS was aware of Shisler's protected activity.

121. There is a causal connection between Shisler's protected activity and CHAS' decision to terminate her from her employment.

122. As a direct and proximate result of CHAS' violation of the WPA, Shisler suffered damages as fully set forth in paragraph 112 of this Complaint.

## COUNT VI
## VIOLATION OF MICHIGAN PUBLIC POLICY
## PLAINTIFF LINDA SHISLER

123. Plaintiff hereby incorporates all previous paragraphs of this Complaint as if fully set forth herein.

124. The State of Michigan has a well-established public policy of encouraging reports regarding substandard EMT and/or paramedic care.

125. The State of Michigan has a well-established public policy of encouraging reports of violations of EMS protocols to the appropriate governing agencies.

126. The State of Michigan has a well-established public policy of encouraging and allowing citizens to criticize and question their government.

127. When Shisler reported Kipper's conduct and statements of December 22, 2020, she was engaging in the exact activity that the legislature and other government bodies have established as the public policy of this state.

128. When Shisler spoke to the CHAS Board, the individual board members and the elected officials of the participating local governments against the decisions of the CHAS Board, she was engaging in the exact activity that the legislature and other government bodies have established as the public policy of this state.

129. Further, in making the above-referenced reports and the above-referenced statements to the governmental representatives, Shisler was acting in accordance with her statutory rights and duties.

130. Further, in making the above-referenced reports and the above-referenced statements to the governmental representatives, Shisler was refusing to violate the law in the course of her employment.

131. As a direct and proximate result of CHAS' violation of public policy, Shisler has suffered damages as fully set forth in paragraph 112 of this Complaint.

## COUNT VII
## VIOLATION OF 42 USC §1983 – FREE SPEECH AND ASSEMBLY
## PLAINTIFF MATTHEW PEGOUSKIE

132. Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

133. Acting under the color of state law, CHAS promulgated and carried out the official policies, orders and directives leading to the termination of Matthew's employment, with wanton and reckless disregard for the civil and constitutional rights of Matthew, including his fundamental right to freedom of speech and freedom of assembly as guaranteed by the First Amendment to the United States Constitution.

134. Matthew's verbal and other opposition to the CHAS Board's decisions was a significant and motivating factor in CHAS' decision to discharge him and remove him from the paramedic education program.

135. Matthew's verbal and other opposition to the CHAS' Board's methods and manners it used in making its decisions was a significant and motivating factor in CHAS' decision to discharge him and remove him from the paramedic education program.

136. Matthew's political opinions and criticisms of the CHAS Board was a significant and motivating factor in Defendant's decision to terminate his employment and remove him from the paramedic education program.

137. Defendant retaliated against Matthew, by discharging him from employment and the paramedic education program, as a direct and proximate result of the above-stated political speech and association.

138. At all times pertinent hereto, Matthew had a clearly established right to freedom of speech and freedom of association of which a reasonable public official would have known.

139. As a direct and proximate result of Defendant's violations, Plaintiff Matthew Pegouskie has suffered damages including, but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, loss of educational opportunities, emotional distress and attorney fees.

**COUNT VIII**
**VIOLATION OF MICHIGAN WHISTLEBLOWER'S PROTECTION ACT**
**PLAINTIFF MATTHEW PEGOUSKIE**

140. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as if fully set forth herein.

141. Matthew was an employee of CHAS as that term is defined by the Whistleblower's Protection Act, MCL 15.361, et. seq. ("WPA")

142. CHAS is an employer as that term is defined by the WPA.

143. CHAS is a public body as that term is defined by the WPA.

144. The Board of Directors of CHAS is a public body as that term is defined by the WPA.

145. The City of Bad Axe, the Villages of Port Austin and Kinde and the Townships of Colfax, Dwight, Hume, Lincoln Meade, Port Austin, Pte. Aux Barques, Verona, Siegel, and Sheridan are all public bodies as that term is defined by the WPA.

146. Matthew engaged in protected activity as that term is defined by the CHAS.

147. CHAS was aware of Matthew's protected activity.

148. There is a causal connection between Matthew's protected activity and CHAS' decision to discharge him from employment and the paramedic education program.

149. As a direct and proximate result of CHAS' violation of the WPA, Plaintiff Matthew Pegouskie suffered damages as fully set forth in paragraph 139 of this Complaint.

**COUNT IX**
**VIOLATION OF MICHIGAN PUBLIC POLICY**
**PLAINTIFF MATTHEW PEGOUSKIE**

150. Plaintiff hereby incorporates all previous paragraphs of this Complaint as if fully set forth herein.

151. The State of Michigan has a well-established public policy of encouraging reports regarding substandard EMT and/or paramedic care.

152. The State of Michigan has a well-established public policy of encouraging and allowing citizens to criticize and question their government.

153. When Matthew spoke to the CHAS Board, the individual board members and the elected officials of the participating local governments against the decisions of the CHAS Board, he was engaging in the exact activity that the legislature and other government bodies have established as the public policy of this state.

154. Further, in making the above-referenced reports and the above-referenced statements to the governmental representatives, Matthew was acting in accordance with her statutory rights and duties.

155. As a direct and proximate result of CHAS' violation of public policy, Plaintiff Matthew Pegouskie has suffered damages as fully set forth in paragraph 139 of this Complaint.

<div align="center">

**COUNT X**
**VIOLATION OF 42 USC §1983 – FREE SPEECH AND ASSEMBLY**
**PLAINTIFF VICKE PEGOUSKIE**

</div>

156. Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

157. Acting under the color of state law, CHAS promulgated and carried out the official policies, orders and directives leading to the termination of Vicke's employment, with wanton and reckless disregard for the civil and constitutional rights of Vicke, including her fundamental right to freedom of speech and freedom of assembly as guaranteed by the First Amendment to the United States Constitution.

158. Vicke's verbal and other opposition to the CHAS Board's decisions was a significant and motivating factor in CHAS' decision to discharge her and remove her from the paramedic education program.

159. Vicke's verbal and other opposition to the CHAS' Board's methods and manners it used in making its decisions was a significant and motivating factor in CHAS' decision to discharge her and remove her from the paramedic education program.

160. Vicke's political opinions and criticisms of the CHAS Board was a significant and motivating factor in Defendant's decision to terminate her employment and remove her from the paramedic education program.

161. Defendant retaliated against Vicke, by discharging her from employment and the paramedic education program, as a direct and proximate result of the above-stated political speech and association.

162. At all times pertinent hereto, Vicke had a clearly established right to freedom of speech and freedom of association of which a reasonable public official would have known.

163. As a direct and proximate result of Defendant's violations, Plaintiff Vicke Pegouskie has suffered damages including, but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, loss of educational opportunities, emotional distress and attorney fees.

WHEREFORE, Plaintiffs Alexandra Fleming, Linda Shisler, Matthew Pegouskie and Vicke Pegouskie pray that this Honorable Court enter a judgment in their favor against Defendant Central Huron Ambulance Service Association in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury of the within cause.

<div style="margin-left:40%">

STEMPIEN LAW, PLLC


*/s/ Eric Stempien*_____
By: Eric Stempien (P58703)
Attorney for Plaintiff

</div>

Dated: May 7, 2021